CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 18 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MELISSA AUSTIN, | ) |
| | ) Civil Action No. 7:06cv00622 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| | ) United States Magistrate Judge |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Melissa Austin ("Austin") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). By order dated November 13, 2006, this case was referred to the undersigned for Report and Recommendation, and is before the court on cross motions for summary judgment.

The undersigned finds that although the Administrative Law Judge ("ALJ") erred in not expressly including non-exertional limitations in the hypothetical to the Vocational Expert ("VE"), that error is harmless as substantial evidence supports the Commissioner's decision that Austin did not satisfy the entitlement conditions of the Act. Additionally, the ALJ did consider the opinion of Austin's treating specialist and gave little weight to the opinion as it was not supported by objective medical evidence. Accordingly, it is recommended that the ALJ's decision be affirmed.

**I.**

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520 (2006); see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the

2

claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C.A. § 423(d)(2)(A) (West 2004); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Austin was born November 1, 1967 (Administrative Record [hereinafter R.] at 166), and is a high school graduate. (R. 189) Austin previously worked as a foundry worker, waitress, cashier, and stocker. (R. 18) Austin testified that she stopped working due to lower back pain that radiated through her legs and chronic depression. (R. 18) On August 9, 2002, Austin protectively applied for DIB, which the ALJ denied on February 6, 2004. (R. 17) Austin protectively applied for SSI payments on March 18, 2004. (R. 17) The Appeals Council remanded Austin's DIB decision for a supplemental hearing on August 16, 2004 and escalated her SSI claim to be heard at the same time. (R. 17) Austin's applications for DIB and SSI allege an onset date of August 21, 2000 due to chronic lower back pain, joint pain from arthritis, and depression. (R. 18)

After an administrative hearing on December 12, 2005, (R. 65-96), Austin submitted additional medical evidence from Dr. Meyer which the ALJ sent to the medical expert who testified at the hearing to review. (R. 19) The ALJ issued a written decision on March 30, 2006 denying both the SSI and the DIB claims. (R. 14-24) The Appeals Council declined further review of the case, (R. 8-10), and adopted the ALJ's decision, thus making the judgment the final decision of the Commissioner. Austin has now appealed that decision to this Court.

Austin disputes the ALJ's finding that she is not disabled and argues that the ALJ failed to meet his burden of establishing that jobs exist in the national economy that Austin can

3

perform. (Pl.'s Br. 12) Specifically, Austin argues that the ALJ did not include all of her limitations in the hypothetical to the VE. (Pl.'s Br. 12) Austin also argues that the ALJ failed to accord proper weight to the opinion of Dr. Meyer, her treating specialist. (Pl.'s Br. 14)

Austin complained of lower back pain during multiple doctor visits in 2000 and 2001 and received various pain medications to help alleviate the symptoms. (R. 237, 249, 235, 317-21, and 245) On September 6, 2001, Austin underwent MRI testing at Giles Memorial Hospital to ascertain the cause of the pain. (R. 229-30) Dr. John Tamminen diagnosed Austin with degenerative disc disease, a small transligamentous central disc herniation with extrusion, a larger central subligamentous disc herniation, and broad base bulging. (R. 229-30) Dr. Sanders prescribed Percocet, a pain medication, on September 11, 2001 in response to a phone call from Austin complaining of pain. (R. 245) As a follow-up from the MRI, Austin scheduled an appointment with Dr. Vascik of the Neurological Center of Southwest Virginia for September 18, 2001.

After seeing Austin, Dr. Vascik informed Dr. Sanders that he could provide no assistance through surgery. (R. 231) Austin had an exaggerated lumbar lordotic curve, she was tender to closed fist percussion over the lumbosacral spine, she could forward flex only about thirty to forty degrees, and she had decreased sensation in her right leg as compared to the left. (Id.) Dr. Vascik indicated that Austin's pain had become increasingly worse over time, and that she had been unable to work for the month preceding the visit. (Id.) Dr. Vascik suggested physical therapy for Austin, but she refused such treatment claiming that it had not provided relief in the past. (Id.) Dr. Vascik, alternatively, suggested one epidural steroid injection. (R. 232) If the

4

injection did not cause the pain to cease, then Dr. Vascik suggested a follow-up with a pain clinic. (Id.)

Dr. Goodrich of The Pain Management Center of the Virginias saw Austin on October 31, 2001. (R. 300) Dr. Goodrich discussed the possibility of physical therapy with Austin, who again stated that such treatment is not beneficial. (Id.) Austin also told Dr. Goodrich that the pain medications she has taken, Percocet, Lortab, and Ultram have all caused nausea. (Id.) Dr. Goodrich therefore ruled out the possibility of narcotic therapy as Austin was experiencing GI sensitivity to the drugs. (Id.) Austin again saw Dr. Goodrich on November 15, 2001 for an epidural steroid injection. (R. 298) During this visit, Dr. Goodrich suggested that Austin begin looking for other work, because he feared that she would re-injure her back if she continued to lift heavy objects. (R. 376)

On November 17, 2001 Austin was admitted to the emergency room at Giles Memorial Hospital for chronic back pain. (R. 234) As a result, Austin was prescribed Toradol, Demerol, and Phenergan. (Id.) Dr. Goodrich suggested that Austin have an MRI performed as soon as possible to check for an epidural bleed. (R. 247) The MRI, performed on November 19, 2001, did not show an epidural bleed, but did show a worsening of her disc herniation. (Id.) Dr. Goodrich suggested another surgical consult with a physician other than Dr. Vascik. (Id.) Dr. Goodrich saw Austin again on December 12, 2001 for a follow-up and developed a plan to manage her pain. (R. 296) The plan included increasing her MS Contin to 30mg, discontinuing Roxanol, increasing her Nortriptyline to 50 mg, increasing her Neurontin to 600 mg, continuing her Vioxx, and beginning Zanaflex. (R. 296-97)

5

Dr. Sanders saw Austin on January 3, 2002 because Austin had been complaining to Dr. Goodrich of paralysis in her legs. (R. 243) At this examination, Austin told Dr. Sanders that she had been essentially bedridden and that she had not worked for the previous six months. (Id.) Dr. Sanders examination revealed no paralysis, an extreme emotional overtone to the exam, and symptoms that are inconsistent with current MRI reports. (Id.) Furthermore, Dr. Sanders suggested psychological services which Austin declined. (Id.) An appointment was made with Dr. Shaffery at the University of Virginia Hospital for February 11, 2002.

Dr. Goodrich followed up with Austin on January 30, 2002 prior to her appointment with Dr. Shaffery. (R. 294) Dr. Goodrich maintained the same prescription medicine regimen and scheduled a follow-up in two months. (R. 295) On February 11, 2002 Dr. Shaffery saw Austin and upon reviewing her MRIs suggested that she have a lumbar CT/myelogram performed. (R. 462) As a result of this exam, coupled with the fact that Austin exhausted conservative treatment options, Dr. Shaffery decided to perform a partial hemilaminectomy[1] and microdiscectomy[2] on Austin. (R. 470)

Dr. Shaffrey performed the operation on May 5, 2002, (R. 262), and by May 29, 2002, Austin was recovering well from the operation with a significant reduction in pain symptoms. (R. 290) On June 28, 2002, however, Austin was admitted to the emergency room and was discharged the next day with instructions to stay on her medications and perform certain

---

[1] A hemilaminectomy is a surgical removal of one side of the vertebral lamina. Dorland's Illustrated Medical Dictionary 829 (30th Ed. 2003).

[2] A microdiscectomy is a debulking of a herniated nucleus pulposus using an operating microscope or loupe for magnification. Dorland's Illustrated Medical Dictionary 1151 (30th Ed. 2003).

6

activities to reduce her pain. (R. 258) Austin again visited the emergency room on July 4, 2002 and was discharged the same day. (R. 252) Dr. Shaffery explained that based on the MRI taken on July 4, 2002, there was nothing that could be done neurosurgically as her MRI did not reveal any cause of pain that could be treated surgically. (Id.) On July 25, 2002, Dr. Goodrich declared Austin's back surgery a failure, because she continued to experience pain. (R. 288) From this date through June 16, 2003, Austin visited the Know Pain Clinic for monthly appointments to manage her pain. The administrative record does not include any medical records from 2004, but from January through September 2005, Austin again made monthly visits to the Know Pain Clinic. Austin was also seen by Dr. David Meyer for her chronic back pain, degenerative disc disease, and possible dysphoria. (R. 512-517) Dr. Meyer saw Austin on November 7, 2005, November 21, 2005, and December 30, 2005. (Id.) The December 30, 2005 visit was for the sole purpose of filling out disability forms provided by Austin's attorney, and Dr. Meyer, in response, opined that Austin could lift/carry ten pounds occasionally, five pounds frequently, could sit for a total of one hour without interruption, could never climb, stoop, or balance, could occasionally crouch and/or crawl, has limited functionality as to reaching and push/pulling, and should avoid moving machinery and temperature extremes. (R. 509-511) Counsel for Austin submitted the opinion of Dr. Meyer after the hearing in the case. (R. 509) The ALJ provided Dr. Meyer's written opinion to Dr. Alexander, the impartial medical expert who testified at the hearing, who opined that Dr. Meyer's conclusions did not follow from any clinical testing or objective medical evidence. (R. 19)

       Based on the record, the ALJ determined that Austin was not disabled within the meaning of the Act. (R. 18) At step one, the ALJ found that Austin had not engaged in substantial gainful

activity since August 21, 2001. (R.19) At step two, the ALJ found that Austin's impairments were severe, but at step three the ALJ determined that they were not severe enough to meet the listing requirements in Appendix 1, Subpart P, 20 CFR Pt. 404. (Id.) The ALJ found Austin's statements about her limitations not fully credible based upon the medical evidence, the testimony of the VE, and Austin's own statements regarding her daily activities. (R. 20)

Before proceeding to step four, the ALJ found that Austin maintained the RFC to perform light unskilled work[3] subject to physical, environmental, and mental limitations. (R. 20) Specifically, the ALJ found that Austin should avoid standing for more than three hours total per day and more than forty-five minutes at a time, should not kneel, crawl, or climb ramps and stairs more than occasionally, and should never balance or climb ropes, scaffolds, and ladders. (R. 21) The environmental limitations the ALJ found included the need to avoid any exposure to temperature extremes, vibration, hazardous heights, and moving machinery. (Id.) The mental limitations included understanding, remembering, and carrying out only short simple instructions and having no more than occasional contact with supervisors, coworkers, and the public. (Id.)

At step four of the analysis, the ALJ determined that Austin would be unable to perform her past relevant work as a foundry worker, cashier, waitress, or stocker because the work required considerable standing and bending. (R. 21) Finding that Austin could not perform past

---

[3] Light work requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

relevant work, the ALJ determined whether Austin could perform other jobs available in significant numbers in the national economy. In order to facilitate such a determination, the ALJ sought the testimony of James B. Williams, a Vocational Expert ("VE"). Williams testified that based upon Austin's education, RFC, and past work experience she would be able to work as a general office worker, information clerk, and telephone survey taker. (R. 22) The ALJ relied on the testimony of the VE and found Austin not disabled under the Act. (Id.)

### III.

The undersigned finds that substantial evidence supports the Commissioner's conclusion that Austin did not satisfy the Act's entitlement conditions. Austin argues that the ALJ failed to accord proper weight to the opinion of her treating specialist Dr. Meyer.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R.

9

§ 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The ALJ considered and properly weighed Dr. Meyer's opinion in making his determination. Dr. Meyer's submitted a written opinion after the close of the hearing, (R. 509), which the ALJ provided to Dr. Alexander, the Medical Expert who testified at the hearing. (R. 19) Dr. Alexander opined that Dr. Meyer's opinion was based upon subjective symptoms and prior medical records rather than objective findings supported by diagnostic or clinical testing. (R. 518) Based on Dr. Alexander's opinion and review of Dr. Meyer's letter, the ALJ gave little weight to Dr. Meyer's opinion in evaluating Austin's claim. (R. 19)

In analyzing the factors set forth in 20 C.F.R. § 404.1527, it is important to note that Dr. Meyer only saw Austin on three occasions from November 7, 2005 until December 30, 2005. Thus the physician patient relationship is negligible. Furthermore, Dr. Meyer's notes from the December 30, 2005 visit indicate that the sole reason for the visit was to review documents that Austin requested be filled out for a disability claim. (R. 513) Dr. Meyer's notes from this visit also indicate that he will consult Austin's old records and other sources before completing the

10

information in the next several days. (Id.) The form, however, is dated the same day as the visit. (R. 511) Finally, Dr. Meyer did not perform any clinical or diagnostic testing in forming his opinion, but solely relied on previous testing and Austin's subjective complaints. (R. 509-17). Dr. Meyer's is a pain specialist, but his opinion conflicts with that of Dr. Alexander. As such, the ALJ is fully justified under 20 C.F.R. § 404.1527 to discredit Dr. Meyer's opinion despite the fact that he is a specialist who examined the patient, because the physician-patient relationship was negligible, his opinion was not supported by objective diagnostic testing, and it was inconsistent with other medical testimony in the record. The opinion of Dr. Alexander, a non-treating non-examining medical expert can be relied upon as it is consistent with the record. Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

## IV.

Austin also argues that the ALJ asked the VE an incomplete hypothetical and erroneously relied upon the VE's answer to determine that Austin could perform the requirements of representative occupations such as receptionist/information clerk, general office clerk, and telephone solicitor. (Pl. Summ. J. at 13) Austin argues that the ALJ neglected to include mental limitations he found in Austin's RFC. (Id.) The ALJ's RFC included the need to avoid temperature extremes and vibration and to have no more than occasional contact with supervisors, co-workers, and the public. (R. 21) In providing a hypothetical to the VE, however, the ALJ failed to include these limitations. (R. 91)

An ALJ must take into account all the specific limitations of a claimant when crafting a hypothetical question to a VE. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. Johnson v.

11

Case 7:06-cv-00622-JCT-mfu   Document 26   Filed 10/18/07   Page 11 of 14   Pageid#: 93

Barnhart, 434 F.3d 650, 659 (4th Cir. 2006) (quoting Walker, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and then relying upon an incomplete hypothetical when reaching a judgment constitutes an error of law. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D.Va. 2002).

In this instance, the ALJ did fail to include the mental limitations listed above in the hypothetical to the VE. However, the undersigned finds that this error is harmless in this case. Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)). The record in this matter is devoid of any testimony or evidence establishing that Austin does have a need to limit contact with supervisors, co-workers, and the public. In fact Austin self-reports that she gets along fine with other people. (R. 207-08) This mental limitation should not have been included in the RFC as there is no evidence to support such a limitation and it is apparent from the record that the ALJ mistakenly included it in the opinion. If remanded, this limitation would not be included, as it was error, and it is therefore inconceivable that a different administrative conclusion would have been reached absent the error. Id.

The ALJ also failed to include the need to avoid vibrations in his hypothetical to the VE. Again, there is absolutely no evidence from any medical source which includes the need to avoid vibrations and as such the ALJ's inclusion of this limitation in his RFC is merely a clerical error that is harmless. The limitation as to vibrations should not have been included in the RFC and it is inconceivable that a different administrative conclusion would have been reached absent the error. Id.

The ALJ's failure to include the need to avoid temperature extremes in his hypothetical to the VE is also harmless. The only medical evidence in the record to support such a finding, comes from the opinion of Dr. Meyer, (R. 511), an opinion which the ALJ accorded little weight. (R. 19) Even if the ALJ actually meant to include such a limitation in the RFC, it is still harmless error to not include the limitation in the hypothetical. The VE testified that given Austin's RFC, she could work as a general office worker DOT# 209.587-010, information clerk DOT# 237.367-014, or telephone survey taker DOT# 205.367-054. (R.22) All three occupations the VE provided are clerical in nature and performed in an office setting. Nothing indicates that temperature extremes would be a problem in such an environment. As such, the undersigned finds that the omission of temperature extremes in the ALJ's hypothetical to the VE is harmless error because it is inconceivable that a different administrative conclusion would have been reached absent the error.

### V.

For the foregoing reasons, the undersigned concludes that the ALJ properly evaluated Dr. Meyer's opinion, accorded the proper weight to the evidence, included all pertinent evidence of record in his calculation of Austin's RFC, and demonstrated that work exists in the local and national economies that the claimant is able to perform. Accordingly, the undersigned recommends that the plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days

hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 18th day of October, 2007

Hon. Michael F. Urbanski
United States Magistrate Judge

14